12 F.3d 205
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
C. L. LITTLE, Party in Interest-Appellant,
v.
ASSOCIATED TECHNICAL TRAINING SERVICES, INCORPORATED,
Plaintiff-Appellee,
v.
Taylor, Frank & Associates, Incorporated, Defendant.
 No. 93-1208.
 United States Court of Appeals, Fourth Circuit.
 Argued: September 29, 2993.
Decided: December 3, 1993.
 
 Appeal from the United States District Court for the District of South Carolina, at Anderson.
 Walter Moore Henritze, for Appellant.
 Thomas Louis Stephenson, Nexsen, Pruet, Jacobs & Pollard, for Appellee.
 D.S.C.
 VACATED AND REMANDED.
 Before WIDENER, Circuit Judge, and BUTZNER and CHAPMAN, Senior Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 This appeal concerns a district court's injunctive order against an unnamed party to a lawsuit. In a preliminary order, the appellant Little, the unnamed party, was permissibly enjoined under Rule 65(d) of the Federal Rules of Civil Procedure as a person acting in concert or active participation with the named defendant. Later, the district court converted the preliminary injunction into a permanent injunction, also binding the appellant. The issue presented is whether the appellant was given notice and a sufficient opportunity to present evidence before the court granted the permanent injunction. We conclude that the court failed to give the unnamed party such notice and the opportunity to present evidence as to why the preliminary injunctive order should not stand and as to why the injunction should not be made permanent. Because this failure was an abuse of discretion, we vacate the court's final order with regard to appellant and remand the case to the district court for further proceedings per our instructions.
 
 I.
 
 2
 Associated Technical Training Services ("ATTS"), a South Carolina corporation, provides technical and training services to electrical utilities in about ten states. Most of ATTS's clients operate nuclear power plants. ATTS's Chief Executive Officer is Gerald Schile, a resident of Seneca, South Carolina.
 
 
 3
 Taylor, Frank & Associates ("Taylor, Frank") is a Georgia Corporation with its principal place of business in Atlanta. It is owned and operated by Clarence Taylor, a Georgia resident.
 
 
 4
 On or about April 27, 1992, ATTS began receiving correspondence from Taylor, Frank, stating that Taylor, Frank had been retained to research and report on various activities related to the retirement fund of ATTS. The first letter also stated that Taylor, Frank was requesting "oversight from the proper justice department branches, labor department, and Internal Revenue for opinions."
 
 
 5
 Next, Taylor, Frank began sending letters to a number of ATTS clients, all electrical utilities operating nuclear power plants. The letters requested the utilities to advise Taylor, Frank of any ATTS employees working in their facilities. The letters also stated: "The case matter under consideration relates only to ATTS corporate (sic), its management, and handling of retirement funds which may be subject to the ERISA Act or similar rules." The letters were all signed by Charles B. Bradford. After receiving the letter, several of the utilities called ATTS and voiced their concerns over whether ATTS was involved in any improprieties.
 
 
 6
 In June 1992, ATTS received a phone call from the Seneca Journal. The local newspaper had received a"client report" prepared by Taylor, Frank. The client report stated that"testimony and documents gathered seem to support the rumor that the retirement fund [of ATTS] has been Schile's personal 'piggy bank' for various ventures of himself and close associates." Further, the report stated that Schile and others might be involved in "tax evasion or conspiracy for tax evasion" and forgery.
 
 
 7
 On June 22, 1992, ATTS filed suit against Taylor, Frank, alleging torts of invasion of privacy, defamation and interference with contractual relations. The complaint did not name C.L. Little, the appellant in this action, as a party. After the suit had been filed, two ex-investigators of Taylor, Frank, Charles B. Bradford and Miles Garner, contacted ATTS. Bradford, who signed the letters described above, gave an affidavit to the attorneys for ATTS. Bradford stated that he was employed by Taylor, Frank from mid February 1992 until May 25, 1992. He stated that he quit Taylor, Frank due to the unethical practices of the company, "primarily regarding Gerald Schile and Mr. Schile's company, Associated Technical Training Services." The affidavit went on to say that Taylor, Frank was initially retained by C. L. "Bob" Little in order to assist Little in recovering from Schile approximately $40,000.00 in commissions that Little claimed Schile owed him from a real estate deal.
 
 
 8
 Also in his affidavit, Bradford stated that Taylor, Frank had not been retained by anyone who was an employee of ATTS or had any association with ATTS or its retirement fund. Bradford stated Little and Taylor, Frank decided to put pressure on ATTS and Schile, its owner, through its investigation so Schile would pay Little certain real estate commissions. Bradford said that Taylor felt he might "be able to take over the business of ATTS and particularly the assets of the retirement fund." Bradford also said that he personally knew of no improper activities on the part of ATTS or its owner, Schile. Bradford added that Taylor, Frank offered him $10,000.00 if he could get Schile indicted.
 
 
 9
 Miles Garner, the other investigator employed by Taylor, Frank, also gave a sworn statement, which the district court found to corroborate Bradford's statements. According to Garner, the whole intent of the investigation was to get Schile's "back against the wall" so Schile would pay money to Clarence Taylor and Little.
 
 
 10
 Faced with these allegations, Taylor, Frank presented no evidence at the initial hearing and through its attorneys consented to ATTS's motion for a preliminary injunction. On June 30, 1992, the district court granted ATTS's request for a preliminary injunction, prohibiting Taylor, Frank and Little, as a person acting in concert with Taylor, Frank, from contacting any persons associated with ATTS and from discussing any alleged improprieties of ATTS and Schile.*
 
 
 11
 After the preliminary injunction had been entered, ATTS filed a Motion to Dismiss Taylor, Frank's Answer and Counterclaim and to declare Taylor, Frank in default. Little filed a Motion to Dismiss the action on the grounds that he was a necessary party under Rule 19 and that he had not been properly named as a party to the lawsuit. On December 21, 1992, the district court entertained arguments on the various motions. Thomas Stephenson, counsel for ATTS and Walter Henritze, counsel for Little, had the following exchange with the court:
 
 
 12
 Stephenson: I want an order from the court continuing the injunction that was entered on June 29th. That's all I want.
 
 
 13
 The Court: All right, I can do it as far as Taylor [, Frank] is concerned, but I don't know about Little. We've got to check on Little and see if he was served.
 
 
 14
 Stephenson: Well, Rule 65 makes an injunction applicable to employees and agents and that's all I want, him as an agent of the company.
 
 
 15
 Henritze: If it please the court, he alleges in the lawsuit and his affidavits all say that Mr. Little hired Taylor [, Frank]. He wasn't an agent or anything else. He's a businessman and a real estate agent in Seneca, South Carolina.
 
 
 16
 The Court: Well, we'll see about that, too. We'll have to take testimony on that. And this is the fourth time--this is the fifth time I've heard this. You know, when you play baseball, three strikes and you're out. Y'all have already gone over the normal number, but I'm going to give you one more. I'm going to give you five strikes.
 
 
 17
 * * *
 
 
 18
 The Court: Okay. You can give that by affidavit. Then I want to see what Mr. Stephenson has got and what he submits, we'll take a look at it. Then if I need a hearing, I'll call you.
 
 
 19
 Henritze: Fine. Thank you, your honor.
 
 
 20
 J.A. 51-52.
 
 
 21
 On January 11, 1993, the district court issued a final order dismissing Taylor, Frank's Answer and Counterclaim, giving ATTS a judgment against Taylor, Frank and converting the preliminary injunction into a permanent one. The permanent injunction, like the preliminary injunction, prohibited Little, as a person acting in concert with Taylor, Frank, from contacting any persons associated with ATTS and from discussing any alleged improprieties of ATTS and Schile.
 
 
 22
 Little now appeals the district court's final order claiming that the court improperly entered a permanent injunction against him after indicating at the final hearing that Little's situation remained unresolved.
 
 II.
 
 23
 This court reviews the district court's entry of an injunction for abuse of discretion. National Org. of Women v. Operation Rescue, 914 F.2d 582, 585 (4th Cir.1990), rev'd on other grounds sub nom. Bray v. Alexandria's Women's Health Clinic, --- U.S. ----, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993).
 
 
 24
 Rule 65(d) of the Federal Rules of Civil Procedure, which pertains to the form and scope of injunctions and restraining orders, states:
 
 
 25
 Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.
 
 
 26
 Fed.R.Civ.P. 65(d). The Supreme Court has commented that Rule 65(d) is derived from the common-law doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in "privity" with them, represented by them or subject to their control. In essence it is that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they are not parties to the proceeding.
 
 
 27
 Regal Knitwear Co. v. NLRB, 324 U.S. 9, 14 (1945).
 
 
 28
 However, the courts have recognized limitations on their ability to bind non-parties with injunctions. In Regal Knitwear, the Court commented that Rule 65(d) should not be construed to allow courts to issue injunctions which are "so broad as to make punishable the conduct of persons who act independently and whose rights have not been adjudged according to law." Id. at 13. Judge Learned Hand, recognizing the federal courts' limitations in this area, commented:
 
 
 29
 [A court] cannot lawfully enjoin the world at large, no matter how broadly it words its decree. If it assumes to do so, the decree is pro tanto brutum fulmen, and the persons enjoined are free to ignore it. It is not vested with sovereign powers to declare conduct unlawful; its jurisdiction is limited to those over whom it gets personal service, and who therefore can have their day in court. Thus, the only occasion when a person not a party may be punished, is when he has helped to bring about, not merely what the decree has forbidden, because it may have gone too far, but what it has the power to forbid, an act of a party. This means that the respondent must either abet the defendant, or must be legally identified with him.
 
 
 30
 Alemite Mfg. Corp. v. Staff, 42 F.2d 832, 832-33 (2d Cir.1930).
 
 
 31
 Under the Federal Rules it is entirely permissible for non-parties to be enjoined when a court finds the non-party is acting in concert or participation with the named party. However, as Judge Hand cautioned, a court must legally identify the participant with the named party before enjoining both persons. At the hearing on June 29, 1992, the court heard arguments from ATTS concerning the conduct of Taylor, Frank and Little. Based on the argument, affidavits and other sworn statements, the court determined that Little should be specifically enjoined as a person acting in concert or participation with the named defendant Taylor, Frank. From the evidence presented, we are satisfied that the requisite legal relationship was established between Taylor, Frank and Little.
 
 
 32
 Although Little was properly enjoined in the preliminary action, we find that Little was not afforded sufficient opportunity to present evidence after he appeared, through counsel, at the December 21, 1992 hearing. While the court indicated that the preliminary injunction would be converted to a permanent injunction with respect to Taylor, Frank, the court noted that further testimony was necessary to determine whether Little had been properly enjoined and given sufficient notice of the injunction. Little was not allowed to argue as to why he should not be permanently enjoined, and he was left with the impression that, for the meantime, only Taylor, Frank was to be permanently enjoined. Counsel for Little has argued persuasively that the district court left Little's situation unresolved before dismissing the case on its merits, but, on January 11, 1993, the court converted the preliminary injunction into a permanent injunction against Taylor, Frank and Little.
 
 
 33
 While the district court expressed concern over the issue of whether Little was properly served, we think the question is inconsequential in this instance. Rule 65 contains no requirement that a person, who has acted in participation or in concert with a named party to a lawsuit, be officially served with process. To require service of process on every potential aider and abettor would frustrate the purpose of the Rule, which is to prevent persons acting in concert with the named defendant from circumventing an injunction when the participant is not named as a party to the suit. The Rule only requires that the participant receive notice of an injunction, post-order, to facilitate compliance with and enforcement of the order. See Schmidt v. Lessard, 414 U.S. 473, 476-77 (1974) (per curiam) (Court noted that the specificity requirements of Rule 65(d) serve two essential functions: (1) preventing uncertainty and confusion on the part of those faced with injunctive orders, thereby avoiding the imposition of sanctions for violations of decrees too vague to be understood; and (2) facilitating informed and intelligent appellate review.).
 
 
 34
 However, we find that fairness required the district court to conduct a hearing at which Little could argue why he should not be permanently enjoined as a person acting in concert with Taylor, Frank. Little was not afforded this opportunity before either the preliminary or the permanent injunction was granted. Although the district court legally identified Little with Taylor, Frank before issuing the preliminary injunction, Little was given the impression at the final hearing that the suit was either being dismissed or continued so that he would have an opportunity to contest the court's preliminary injunctive order. In either case, the court made it clear that Little's situation was unresolved and further testimony was necessary to settle the matter. Despite this, the permanent injunction was issued which bound appellant Little. We conclude that such was an abuse of discretion.
 
 
 35
 Accordingly, this judgment is vacated and this cause is remanded to the district court to proceed in accordance with this opinion.
 
 VACATED AND REMANDED
 
 
 *
 Specifically, the injunction read: "It is hereby ordered that the Defendant [Taylor, Frank], its officers, representatives, agents, servants, and employees, and specifically Clarence E. Taylor, and all persons acting in concert or participating with the Defendant, and specifically, C.L. Little, pending the determination at trial on the merits of this case, be and are hereby restrained and enjoined from: (a) contacting the employers, suppliers, clients and customers of [ATTS]; (b) discussing any alleged improprieties of [ATTS], its Chief Executive Officer, Gerald B. Schile, or its employees with anyone other than their counsel; and (c) entering upon the property of [ATTS]." Order, June 30, 1992, p. 6